THE GEORGE JONAS GLASS COMPANY

*v.*

THE GLASSBLOWERS' ASSOCIATION OF THE UNITED STATES AND CANADA et al.

[Filed March 16th, 1903.]

Defendants, who were engaged in a strike, had been restrained from intimidating complainant's employes and from congregating for the purpose of intimidating any person seeking employment of complainant. In an application to punish defendants for contempt, the only evidence was that two men, who approached complainant's works, were asked whether they were going to work in the factory, and were accompanied by several strikers to the gates of the factory, but were permitted to enter without molestation; that when they came from the factory they were followed at a distance, but, on their return, entered the factory without molestation, but were thereafter followed to the house of a third person, with whom some of the strikers offered to fight. The proof as to the assemblage of the persons was uncertain.—*Held*, .that the evidence was not sufficient to justify a finding that the injunction had been violated.

On bill, &c., and second petition that certain defendants be adjudged in contempt.

*Messrs. Hampton & Fithian* and *Mr. John W. Harding,* for the complainant.

*Mr. Louis H. Miller* and *Mr. John W. Wescott,* for the defendants.

GREY, V. C. (orally).

The petition in this matter asks that certain defendants may be adjudged to be guilty of contempt because of their action, on September 17th, 1902, in alleged breach of a restraining order of this court made on the 7th day of July, 1902. The order restrains the defendants from attempting to prevent any person, by threats, intimidation, annoying language or acts, force or

violence, from entering the service of the complainant, and from congregating for the purpose of intimidating, threatening or coercing any person seeking employment of complainant, &c.

An order to show cause was allowed, and testimony in open court was taken in support of, and in opposition to, the charges of the petition.

The petitioner's testimony is that two men, named Mingin and Noble, had been told that if they applied at the works of the complainant company they could probably get employment. They approached the complainant's factory, by walking along the railroad which passes by it. They were met by two or three men, apparently strikers, one of whom asked whether they were going to the factory to work. They denied that they were, and proceeded towards the factory, several of the strikers accompanying them nearly to the gates. They went into the factory, without interference or molestation of any sort. They then left the factory to go to the house of a Mr. Schaible; three or four other men went ahead of them and some followed on bicycles, no conversation passing between them. They were unable to find Mr. Schaible's house, and returned to the factory, without hindrance from anyone, some of those who had accompanied them going before and some behind them at distances varying from twenty-five to seventy-five yards. At the factory they stated their inability to find Schaible's house, and started out again with a Mr. Dare to find it. They testify that they were now followed, at some yards distance, by a considerable number of men on bicycles and afoot. When they were going across a lot one of these men threw an apple at them, and Mingin says called Mr. Dare a foul name. Noble says, if he understood them aright, the men called foul names after all of them. When they got to the Schaible house, Mingin, Noble and Dare went into the house, while the men who followed remained outside. One of the latter came to the door and wanted to talk to Mingin and Noble. Mingin went to the door, and was asked by the man if he was going to work at the factory. Mingin again told him that he "didn't know as he was." Mr. Schaible and the men then had some words, and one of the latter pulled off his coat and invited Schaible to fight. The two, Mingin and Noble, stayed in the

house three-quarters of an hour, and then left by a back door. Neither Mingin nor Noble was hired to work at the factory, and both declared they were afraid to stay.

Their testimony is flatly contradicted by that of a large number of witnesses, who deny the use of any opprobrious words or threats.

It is shown, by the testimony of Mingin and Noble themselves, that they had been drinking when they came to Minotola, and the proof strongly indicates that they were considerably under the influence of liquor. They admit that they told the first men they met that they did not mean to apply for work at the complainant's factory, and that they afterward repeated this statement at Mr. Schaible's house. There is no pretence of proof that there was in fact any interference seeking to prevent the two men from entering the complainant's factory. They went into the factory twice without any attempt on the part of anyone to stop or molest them.

The testimony, which it is claimed shows hostility to Mingin and Noble, charges manifestations only by words. These might be sufficient to show a breach of the restraint if they were proven by the weight of the evidence. But testimony given by the complainant's own witnesses, as to the words used, is neither consistent nor clear in stating what was said, and it is flatly contradicted by numbers of witnesses who were in the party or followers of it.

There is but one element in the proofs which leads me to hesitate in disposing of this motion, and that is, on the charge that there was a congregating of a large number of men for the purpose of intimidating those who might wish to seek employment at the complainant's factory.

There can be no question, taking the whole case together, that, at and near the complainant's factory, a system of picketing has been inaugurated. All of the approaches to Mr. Jonas' factory are watched by these men, who frankly say that they propose to persuade (as they say, peaceably) anybody from taking employment in the factory.

I have not been invited to declare that mere peaceable picketing of public roads is in itself a breach of the restraint. I am not prepared to say, if that question were under consideration,

George Jonas Glass Co. *v.* Glass Blowers' Association.

that men may not, under the law, stand in a public road and try, in a peaceable way, to persuade other people not to take work in a factory. The difficulty in such cases is that the picketing is usually done by persons who are ignorant of the line where persuasion ends and intimidation begins; who are actuated, to a considerable extent, by a determination to accomplish the ultimate object—the prevention of employment at the factory. They are men who have never felt the responsibility attendant upon the exercise of power. When they know that the result which they wish to accomplish can be certainly attained by the use of intimidation or force, the line of persuasion is very apt to become obscure and to be ignored, and conduct which ought to be simple persuasion between one man and another, becomes a course of threatening or violence for the accomplishment of the result sought.

The proof on the point of the assemblage of a number of the defendants for the purpose of intimidating persons seeking the complainant's employment was uncertain and variant as to their number, and still more so as to their purpose. Noble and Mingin themselves differ as to their number, and do not show that, at any time, the followers approached at all nearly to them, apparently not near enough for them to distinguish their remarks with any certainty.

On this point, however, the testimony comes nearer to showing a breach of the restraint than on any other line of the examination. I make this judgment with some hesitation, but, considering the weight of all the testimony, I am not able to say that a breach has been shown.

The prayer of the petition, that certain defendants be held to be in contempt because of their conduct in the incident of September 17th, 1902, narrated in the petition, is refused.